```
          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND

                             :
VINCENT R. HOWIE             :
                             :
      v.                     :  Civil Action No. DKC 2006-3465
                             :
PRINCE GEORGE'S COUNTY, ET AL.
                             :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case arising under 42 U.S.C. § 1983 is a motion for summary judgment filed by Defendants Antonio Hill, Glenn Long, John Taylor, and Marcus Jenkins. (Paper 3). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the following reasons, Defendants' motion will be denied.

**I. Background**

The following facts are taken in the light most favorable to Plaintiff, the non-moving party. On November 3, 2005, Plaintiff Vincent Howie was walking in a poorly-lit area near an apartment complex in Riverdale, Maryland. Defendants Detective Antonio Hill, Corporal Glenn Long, Corporal John Taylor, and Officer Marcus Jenkins were in the area at that time conducting a drug bust. (Paper 35, at 2). While Plaintiff was walking, he noticed that people in the surrounding area suddenly began to scatter in all directions. Plaintiff also noticed several people, including some of the Defendants, running toward him. One of the individuals

ordered Plaintiff to get on the ground. After Plaintiff got on the ground, one or more of the Defendants announced that they were police officers and handcuffed Plaintiff's hands behind his back.

While Plaintiff was lying on the ground with his hands handcuffed behind his back, one or more of the Defendants began to kick and beat Plaintiff on the side, back, and shoulders. The remaining Defendants did nothing to stop the beatings. Plaintiff briefly lost consciousness while he was being beaten. Upon regaining consciousness, Plaintiff noticed that a transport vehicle had pulled up near the area where he was lying handcuffed. (Paper 35, at 3). One or more of the Defendants forcibly jerked Plaintiff up by the handcuffs to put him into the back of the transport vehicle. (*Id.*). Plaintiff cried out that he was in severe pain, but Defendants did not react to Plaintiff's expressed complaint. (*Id.*). Plaintiff was then taken to the local police precinct and placed in a holding cell, where Plaintiff repeatedly exclaimed that he was in severe pain. Again, Defendants did not react to Plaintiff's expressed complaint. (*Id.*).

After Plaintiff was "booked," he was transported to the Southern Maryland Hospital Center where he was examined and treated for bruising, pain, spasms, and trauma in his back and shoulder. (Paper 51, Ex. 6, Plaintiff's Hosp. Records). Defendants did not disclose in their written reports that any force was used during the arrest or that Plaintiff was taken to the hospital for

treatment.[1]  Even after Plaintiff received treatment for his back and shoulder injuries, he continued to suffer chronic injuries in his back and shoulders.  (Paper 35, at 3).  Prior to sustaining his injuries, Plaintiff was employed as a furniture mover.  (*Id*. at 4). Plaintiff is now unable to engage in significant bending and lifting and thus can no longer work in the furniture moving business.  Plaintiff alleges that he continues, and will continue throughout his life, to experience physical, mental, and emotional pain and suffering.  (*Id*.).

Plaintiff, proceeding *pro se*, filed a complaint against Defendants on December 29, 2006.  (Paper 1).  On August 17, 2007, Defendants filed a motion for summary judgment against Plaintiff, which this court denied.  Plaintiff, represented by counsel, filed a second amended complaint against Defendants on May 9, 2008, alleging two counts under 42 U.S.C. § 1983: (1) the use of excessive force by Defendants; and (2) policies and/or customs by the County allowing excessive force and failure to train.  (Paper 35, at 4-5).  Defendants filed their answers to Plaintiff's amended

---

[1] After receiving treatment, Plaintiff was returned to police custody and was subsequently charged with five drug and firearm-related offenses.  (Paper 1, at 5); (Paper 1, Ex. 3, at 2-3).  At Plaintiff's criminal trial on March 17, 2006, all testifying officers stated under oath that no force had been applied to Plaintiff during his arrest.  (*Id*. at 5).  At the conclusion of trial, the jury found Plaintiff guilty of possession of a dangerous substance (cocaine) and Plaintiff was sentenced to four years of incarceration with the Division of Corrections, set to begin November 3, 2005.  (*Id.* at 14).

complaint on May 19, 2008. (Papers 37-42). On October 17, 2008, Defendants filed a second motion for summary judgment on count I of Plaintiff's amended complaint. (Paper 51).

**II. Standard of Review**

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979). The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592,

595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997), *cert. denied*, 522 U.S. 810 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

**III. Analysis**

Defendants argue that they are entitled to summary judgment because they did not violate Plaintiff's constitutional rights, and are thus entitled to qualified immunity. Specifically, Defendants assert that: (1) they did not use excessive force against Plaintiff; (2) Plaintiff was a pre-trial detainee for purposes of the excessive force analysis and his alleged injuries were no more

5

than *de minimus*; and (3) Defendants Hill and Long had no physical contact with Plaintiff and therefore should be dismissed from the case as a matter of law.  (Paper 51, at 4, 9).

**A. Qualified Immunity**

The Supreme Court of the United States recently revised the procedure for determining whether a defendant is entitled to qualified immunity.  *Pearson v. Callahan*, 129 S.Ct. 808 (2009).  Instead of the rigid two prong analysis, which was to be "considered in proper sequence" as directed in *Saucier v. Katz*, 533 U.S. 194, 200 (2001), courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.* at 818.  The first prong considers whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201.  If the evidence establishes a violation of a constitutional right, the second prong is to assess whether the right was "clearly established" at the time of the events at issue.  *Id*.  If the right was not clearly established, the qualified immunity doctrine shields a defendant officer from liability.  The court should make a ruling on the qualified immunity issue "early in the proceedings so that the costs and

expenses of trial are avoided where the defense is dispositive." *Id.* at 200.

**1. Whether Plaintiff's Constitutional Rights Were Violated**

**a. Use of Excessive Force**

Defendants assert that Plaintiff's constitutional rights were not violated because no force was applied to Plaintiff during the course of his arrest. Defendants further maintain that, because Plaintiff cannot identify a single officer who allegedly kicked and punched him, Plaintiff has no evidence to support a claim that any of the Defendants used excessive force following his arrest. Defendants argue that Plaintiff's allegations are merely conclusory and are insufficient to defeat a motion for summary judgment. Plaintiff counters that the most important fact of the case, whether Defendants used force on Plaintiff in effecting his arrest, remains ardently contested.

Claims of excessive force during an arrest or investigatory stop are examined under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). This process requires balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)(internal citation omitted). Factors to be included in making this determination include the severity of the crime,

7

whether there is an immediate threat to the safety of the officer or others, and whether the subject is resisting arrest or attempting to flee.  *See Graham*, 490 U.S. at 396.  The determination is to be made "from the perspective of a reasonable officer on the scene."  *Id*.

The Fourth Circuit adopted the *Graham* legal standard in *Greenidge v. Ruffin*, 927 F.2d 789 (4th Cir. 1991).  The court noted that an officer's use of force must be judged from the perspective of the officer on the scene rather than the 20/20 vision of hindsight, and that the calculation of reasonableness must make allowances for the fact that police officers are many times forced "to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation."  *Id.* at 791-92 (citing *Graham,* 490 U.S. 386)(internal citations and quotations omitted).  The Fourth Circuit has further held that reasonableness is determined "based on the information possessed by the officer at the moment that force is employed."  *Waterman v. Batton*, 393 F.3d 471, 477 (4th Cir. 2005).

It is inappropriate for a court to grant summary judgment for an excessive force claim when there are disputes regarding the degree, or existence, of the alleged use of excessive force.  *Young v. Prince George's County, Maryland,* 355 F.3d 751 (4th Cir. 2004)(finding summary judgment precluded by existence of genuine

8

issues of material fact as to the degree and reasonableness of force used by officer).  Here, not only is there a genuine issue of material fact as to the reasonableness of the alleged force used by Defendants, Defendants dispute that *any* force was used in Plaintiff's arrest.  Plaintiff, however, has presented evidence to the contrary.  Specifically, Plaintiff maintains that he was beaten by the police "jump team" that was involved in his arrest.[2] (Paper 52, Ex. A, Plaintiff Dep., at 23-24, 26, 31-32).  Plaintiff has submitted a notarized eye witness affidavit describing both the force allegedly used by officers against Plaintiff while he was in restraints, as well as Plaintiff's condition after the alleged beating.  (Paper 52, Ex. F, Brown Aff.).  Furthermore, Plaintiff attached to his complaint a hospital record from Southern Maryland Hospital Center in Clinton, Maryland showing that: he was examined in the emergency room at approximately 1:22 a.m. on November 4, 2005; he complained of being assaulted by police and of experiencing pain in his left rib, flank, and back; he was diagnosed with a possible musculoskeletal back strain and flank contusion; he was prescribed Flexiril; and the Doctor examining him ordered x-rays.  (Paper 51, Ex. 6, Plaintiff's Hosp. Records).

Finally, an analysis of the *Graham* factors precludes granting Defendant summary judgment.  Defendants do not contend that

---

[2] In their motion for summary judgment, Defendants admit that each Defendant officer participated in the buy/bust operation that resulted in Plaintiff's arrest.  (Paper 51, at 3).

9

Plaintiff posed an immediate threat to the safety of the officers or others, nor do they argue that Plaintiff resisted arrest. Defendant Taylor acknowledged in his deposition that Plaintiff "fully cooperated" with the officers' verbal commands and that there was no reason to believe that Plaintiff was dangerous. (Paper 52, Ex. D, Taylor Dep., at 16-17); *compare Wilson v. Flynn*, 429 F.3d 465, 468 (4th Cir. 1995)(court held that the officer's use of force was objectively reasonable under the circumstances because the plaintiff was drunk, "tearing up the house," and actively resisted arrest). Despite Defendants' assertions to the contrary, Plaintiff has provided sufficient evidence to create a genuine issue of material fact regarding whether force was used and, if so, whether the force used was reasonable and whether Defendants were the perpetrators.

**b. Whether Plaintiff was a Pre-Trial Detainee**

Next, Defendants assert that the Fourth Amendment "reasonableness" standard does not apply to this case because Plaintiff's excessive force claim falls under the context of a pre-trial detainee, as Defendants allegedly used excessive force only after they handcuffed Plaintiff. Defendants argue that once they handcuffed Plaintiff, the arrest was complete and Plaintiff was in police custody. Consequently, Plaintiff's only right was to be free from injury that was more than *de minimus.* Because Plaintiff's alleged injuries were *de minimus*, Defendants insist

10

that Plaintiff's claim fails.  (Paper 53, at 3).  Plaintiff maintains that because he was beaten immediately after being handcuffed, he was not a pre-trial detainee and the *de minimus* standard therefore does not apply.

In *Graham,* 490 U.S. at 395 n.10, the Supreme Court of the United States admitted that "[o]ur cases have not resolved the question [of] whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins, and we do not attempt to answer that question today." However, the mere application of handcuffs to an otherwise free citizen does not immediately re-define the individual as a pre-trial detainee and consequently remove the protections of the Fourth Amendment.  *Id.* at 395-99 (applying Fourth Amendment protections to excessive force claim where police officers handcuffed the plaintiff *before* lifting the plaintiff up from behind, placing him face down on the hood of a car, shoving his face against the hood of the car, and throwing him headfirst into the police car); *Young,* 355 F.3d 751 (applying Fourth Amendment protections to excessive force claim where police officer handcuffed the plaintiff *before* grabbing him by his neck, placing him in a headlock, spinning him around toward the ground, throwing his face to the ground, forcefully placing knee into center of his back, and pounding a knee into his back).

11

The facts of *Graham* and *Young* are analogous to those in the present case. In all three cases, the alleged excessive force occurred *after* the actual application of handcuffs, but while all parties were still at the scene of the arrest. Therefore, Defendants are incorrect in asserting that the mere application of handcuffs to an otherwise free individual removes the individual's Fourth Amendment rights. This court, having previously determined that Plaintiff's rights were protected under the Fourth Amendment, consequently denied Defendants' prior motion for summary judgment due to the existence of genuine issues of material fact. Defendants have asserted no additional facts or information that would affect the analysis of this issue.

### c. Bystander Liability

Finally, Defendants Long and Hill insist that they could not have violated Plaintiff's constitutional rights because they never came into contact with Plaintiff and did not participate in his arrest. Defendants maintain that in an action alleging excessive force, officers who had no physical contact with the plaintiff are dismissed from the case as a matter of law. (Paper 51, at 6)(citing *Marshall v. Odom*, 156 F.Supp.2d 525, 531 (D.Md. 2001)).

In his opposition, Plaintiff counters that Defendants Hill and Long can be held liable under the theory of "bystander liability" because they had a duty to prevent Defendants Taylor and Jenkins from using excessive force during Plaintiff's arrest. Bystander

12

liability stems from the notion that "one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge." *Randall v. Prince George's County, Maryland*, 302 F.3d 188, 204 (4th Cir. 2002)(quoting *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972)). Plaintiff argues that when viewing the evidence in the light most favorable to him, there is a triable issue of fact regarding whether bystander liability attaches to Defendants Hill and Long. (Paper 52, at 9).

Defendants insist that Plaintiff's failure to assert a claim for bystander liability in his amended complaint prejudices them. Plaintiffs did, however, plead this theory in their amended complaint. Count I alleges that Defendants "employed, supervised and/or knowingly failed to stop the use of excessive force." (Paper 35, at 4). One of the factual allegations Plaintiff explicitly sets forth in the amended complaint is that the "remaining Defendant Officers did nothing to stop and acquiesced in, the beatings." (*Id*. at 3). Furthermore, the claim of bystander liability derives from the same evidence obtained during discovery for the excessive force claim set forth in the amended complaint. *See, e.g., Edwards v. City of Goldsboro*, 178 F.3d 231, 242-43 (4th Cir. 1999). Accordingly, Defendants were put on notice and will not be prejudiced by Plaintiff's claim of bystander liability.

Defendants also maintain that Plaintiff cannot meet his burden to assert a claim for bystander liability. (Paper 53, at 3-4). An officer can be held liable for bystander liability in cases where "a bystanding officer (1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act." *Randall*, 302 F.3d at 203. Defendants first argue that officers Long and Hill had no physical contact with the plaintiff and therefore should be dismissed from the case as a matter of law, relying on *Marshall v. Odom*. *Marshall* and its predecessors stand for the proposition that "[i]n the absence of *any underlying use of excessive force* against the Plaintiff, liability cannot be placed on either . . . [officer] for failing to intervene . . . ." *Marshall*, 156 F.Supp.2d at 531 (citing *Hinkle v. City of Clarksburg, West Virginia*, 81 F.3d 416, 420 (4th Cir. 1996))(emphasis added). Thus, *Marshall* held that officers cannot be held liable under bystander liability for a failure to intervene when no excessive force was actually applied. *See also Hinkle,* 81 F.3d at 420 (holding bystander liability inapplicable because jury had rejected the plaintiff's previous excessive force claim, therefore finding an absence of any underlying excessive force against the plaintiff for which the officer could be held liable). Here, in contrast, there is a genuine issue of material fact as to whether Defendants used excessive force against Plaintiff.

Defendants also maintain that Plaintiff has not provided sufficient evidence that Defendants Long and Hill *could have* intervened at the time of any alleged force because Hill was only in radio communication with the other Defendants and Long was seated in the van, some distance away from Plaintiff.  However, Hill and Long's ability to respond to a fellow officer's illegal act is a genuine issue of material fact reliant on a number of factors including: how far Hill and Long were located from Plaintiff; how long it would take Hill and Long to arrive at the scene of the arrest in order to intervene with the alleged force; and whether either officer could have used the radio contact with the arresting officers to intervene in the alleged force.

### 2. Whether Plaintiff's Constitutional Rights Were Clearly Established at the Time of the Event

The second prong of the *Saucier* framework is whether the constitutional right was clearly established at the time of the events at issue.  The key issue is whether the law, when the events in question occurred, "gave the officials 'fair warning' that their conduct was unconstitutional."  *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006).  "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  "[A]lthough the exact conduct at issue need not have been held to be unlawful in order for the law governing an officer's actions to be clearly

established, the existing authority must be such that the unlawfulness of the conduct is manifest." *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998) *aff'd*, 526 U.S. 603 (1999). However, the precise action or combination of actions that will trigger a Fourth Amendment violation is "often difficult for even the constitutional scholar to discern because the legal doctrine has developed and continues to develop incrementally." *Tarantino v. Baker*, 825 F.2d 772, 775 (4th Cir. 1987).

The law is clearly established that individuals have a right to be free from excessive force during the course of a seizure. *Turmon v. Jordan*, 405 F.3d 202, 207 (4th Cir. 2005)(finding the "general right to be free from unreasonable seizures is as old as the Fourth Amendment"). However, as previously explained, there is a genuine issue of material fact as to whether Defendants used excessive force in the course of Plaintiff's arrest.

**IV. Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment on count I will be denied. A separate Order will follow.

                                          /s/
                                    DEBORAH K. CHASANOW
                                    United States District Judge